IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DeMARCUS JOHNSON, | ) | |
|     Plaintiff, | ) | Case No. 14 C 1522 |
| | ) | |
|     v. | ) | Judge Joan B. Gottschall |
| | ) | |
| SHERMAN REITER, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In his underlying state court criminal case, plaintiff DeMarcus Johnson entered a guilty plea to charges of aggravated assault and the unlawful possession of a weapon by a felon. During his plea colloquy, Johnson admitted that he pointed a gun at Joliet police officer Sherman Reiter just before Officer Reiter shot Johnson in the stomach. In this § 1983 excessive force case against Officer Reiter, Johnson denies that he pointed his gun at Officer Reiter and argues that he admitted that he did in his state court case so to obtain a lower sentence and avoid the risk of a trial. Officer Reiter has filed a motion for summary judgment, arguing that the doctrine of collateral estoppel prevents Johnson from contesting that he pointed a gun at Officer Reiter. For the following reasons, Officer Reiter's motion is granted.

### I. BACKGROUND[1]

**A.    The Shooting**

Plaintiff DeMarcus Johnson, an African-American male, has fathered seven children. Russsheda Bass, who resided in a two-story single family home at 508 Second Avenue in Joliet

---

[1] The following facts are drawn from the parties' Rule 56.1 submissions and are undisputed unless otherwise noted. Some of Officer Reiter's responses to Johnson's facts do not point to evidence that contradicts evidence cited by Johnson. To the extent that Officer Reiter's evidence is unresponsive, Johnson's facts are deemed admitted. *See*, *e.g.*, *Lynd v. Bristol Kendall Fire Prot. Dist.*, No. 11 C 7014, 2015 WL 5162742, at *3 (N.D. Ill. Sept. 2, 2015).

at the relevant time, is the mother of three of his children.² On July 29, 2012, Johnson and Russsheda saw each other at a family gathering at the home of Russsheda's cousin, Searcia Warren. Johnson had consumed beer and vodka, and was also under the influence of PCP.

*Russsheda's Version of Events*

After the gathering concluded, Johnson ended up at Russsheda's home at 508 Second Avenue, although he could not recall how he got there. Russsheda told Johnson to lie down on the living room couch and went upstairs to her bedroom. That night, Johnson went upstairs to talk to Russsheda approximately twelve to thirteen times to talk for five to ten minutes per visit because he was agitated about Warren's relationship with an individual from Africa. Russsheda decided to ask Johnson to leave but noticed a gun hanging from his pocket while Johnson was leaning against her baby son's crib.

At the time, Johnson, Russsheda, Russsheda's sister Tiffany Bass, Russsheda's one-month old son, and Tiffany's two-week old son were in Russsheda's home. Russsheda did not tell Johnson that she had seen the handgun. She wanted to call the police but her phone was dead so she went to Tiffany's room to get Tiffany's phone.

Russsheda called the police to ask them to remove Johnson from her home. Tiffany argued with Johnson and Russsheda got between them because, unbeknownst to Tiffany, Johnson was armed. Russsheda and Tiffany tried to push Johnson down the hall, and they all fell down the stairs. According to Russsheda, Tiffany ended up on the stairs and Russsheda and

---

² Russsheda Bass and her sister, Tiffany Bass, are involved in the events underlying this action. For clarity, the court will refer to the sisters by their first names. In addition, the record contains multiple spellings of "Russsheda." The court will use the spelling provided by Russsheda during her deposition.

Johnson ended up lying on a table in the living room. The gun fell out of Johnson's pocket. Everyone saw it, and Tiffany ran back upstairs.

At her deposition, Russsheda testified that Johnson picked up the gun, put it to his head, and threatened to kill himself. Johnson moved from the living room to the dining room, keeping the gun pointed to his head as he told Russsheda that he wanted to die because no one loved him anymore. The police (Officer Reiter and his partner, Officer Williams) arrived and entered Russsheda's home through the front and rear doors, respectively.[3]

Russsheda testified that at that time, Johnson was in the dining room with the gun trained on his head. Russsheda saw Johnson holding the gun to his head shortly before he was shot. When she heard a gunshot immediately after the command for Johnson to drop his gun, she thought Johnson had shot himself.

*Johnson's Version of Events*

Johnson testified at his deposition that he was walking from the living/dining room area when the police arrived because he wanted to leave. He felt "paranoid" and kept putting the gun to his head. (Johnson Dep. at 57.) Johnson saw a police officer, who turned out to be Officer Reiter, enter the home through the front door with his gun drawn. Officer Reiter had pepper spray in his holster, as well as a baton. The range of pepper spray is about seven feet and Officer Reiter can pull out his pepper spray as fast as he can pull out his gun. After Officer Reiter entered the home, he was standing about six or seven feet away from Johnson.

---

[3] Johnson's statement of additional material facts cites to evidence relating to Officer Reiter's prior issues with violence in 1999 and 2003 and a 2012 lawsuit against Officer Reiter brought by an African American male who alleged that another officer punched and kicked him repeatedly while Officer Reiter watched and made a racist comment. The court will not summarize this evidence as the details are irrelevant for present purposes.

Johnson asserts that after he saw the officers, he "kept putting [the gun] to [his] head." (*Id*.) When Officer Reiter entered the home, Johnson states that he stepped backwards towards a wall, closed his eyes, and put the gun to his head. While keeping the gun trained on his head, Johnson heard someone say "drop your weapon, drop your weapon." (*Id*. at 61.) Johnson asserted that before he was shot, he kept the gun on his head and did not point the gun at anyone else  In contrast, in his pro se original complaint, Johnson alleged that the police told him to drop his weapon and "[u]pon removing the gun from his head the defendant police officers shot plaintiff in the stomach." (Comp., Dkt. 1, at 22.)

*The Shooting*

A single shot from Officer Reiter rang out and struck Johnson in the stomach. At the time, Officer Reiter had been in the home for approximately one minute and was standing approximately six or seven feet from Johnson. Officer Williams was also on the scene as he had entered the home using the rear door. Officer Williams did not fire his weapon while he was at Russsheda's home.

**B.    The State Court Criminal Proceedings**

Johnson was charged with five felonies related to the incident: armed violence, aggravated domestic battery, aggravated assault, unlawful possession of a weapon by a felon, and unlawful possession of a controlled substance.[4] Johsnon was offered, and accepted, a plea deal in which he could plead guilty to Counts 3 (aggravated assault) and 4 (unlawful possession of a weapon by a felon) and the remaining counts would be dismissed.

---

[4] Count 4 is entitled "unlawful use of weapon by a felon." (Bill of Indictment at 4.) The body of the count indicates that it is based on the unlawful possession of a weapon by a felon. Thus, the court will refer to Count 4 as "unlawful possession of a weapon by a felon."

In April 2013, while represented by counsel, Johnson appeared before Judge Sarah Jones in the Circuit Court of Will County for a change of plea hearing in *People v. Johnson*, 2012 CF 1747. Johnson agreed to plead guilty to Counts 3 and 4 and the remaining counts were dismissed. Count 3 (aggravated assault), alleged that Johnson, in violation of 720 Ill. Rev. Stat. § 5/12-(c)(8), "knowingly pointed a Cal Tech 9mm handgun toward [Officer] Reiter, in a manner which placed [Officer] Reiter in reasonable apprehension of being shot, knowing [Officer] Reiter to be a peace officer engaged in the execution of his official duties." (Bill of Indictment at 3.)

During the change of plea hearing, the court advised Johnson that he had the absolute right not to plead guilty to the charges. Johnson indicated that he understood and wanted to plead guilty to Counts 3 and 4. Johnson did not discuss his motivation for his plea during the change of plea hearing. However, at his deposition, Johnson testified that he believed that he would likely be convicted of Count 1 (armed violence) if he went to trial, and because that was a Class X felony, he could get a prison sentence of more than 15 years. Johnson also testified that his own father was in jail for twenty years, and Johnson wanted to do whatever he could so his seven children would not also have a father in jail for decades.

During the change of plea hearing, the prosecuting attorney gave the factual basis for the plea. Counsel stated that Officer Reiter arrived at the home with his gun drawn and saw Johnson pointing a gun towards Johnson's chest. "Officer Reiter ordered [Johnson] to drop the handgun several times." (Change of Plea Tr. at 6.) "At one point during the altercation, [Johnson] did turn the gun towards Officer Reiter, and Officer Reiter then shot at [Johnson]." (*Id*.) Johnson responded "yes," when asked if that was "the crime that [he] committed." (*Id*. at 7.)

After the court explained Johnson's rights to him, it asked Johnson if he still wished to plead guilty and Johnson stated that he did. The court found that Johnson's plea of guilty was voluntary and entered judgments of conviction on Counts 3 and 4. Johnson gave a statement to the court. He apologized to his children, his mother, his family and the officers, stating, "I caused some harm in the situation with being high. The officer – I pointed a gun at the officer being under the influence. I understand that even though I was under the influence there are still consequences to the mistakes that had happened." (*Id*. at 17.)

During his deposition, Johnson stated that his criminal defense attorney had advised him that the court might not accept his plea, and that if it did, he would have to convince the court that a lighter sentence was appropriate. According to Johnson, this motivation made him decide to express remorse, refrain from objecting to the facts underlying Counts 3 and 4, and untruthfully admit that he pointed his gun at Officer Reiter.

After Johnson's allocution, the court characterized Johnson's acceptance of responsibility as unusual and stated that it appreciated the fact that Johnson had reflected on his situation. The court then sentenced Johnson to a term of six years of imprisonment. This federal lawsuit raising a Fourth Amendment excessive force claim based on Officer Reiter's decision to shoot Johnson in the stomach followed.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### III. DISCUSSION

Officer Reiter's motion for summary judgment is based on a single theory: pursuant to the doctrine of collateral estoppel, Johnson's admission that he pointed his gun at Officer Reiter on the night of the shooting during his state court plea means Johnson cannot deny that he pointed the gun in this case. This issue is critical as Johnson appears tacitly to concede that if he pointed his gun at Officer Reiter, he cannot claim that Officer Reiter's use of force was unconstitutionally excessive.

**A.**    ***Heck v. Humphrey***

Before reaching Officer Reiter's collateral estoppel argument, the court pauses briefly to address *Heck v. Humphrey*, 512 U.S. 477 (1994).[5] In that case, the Supreme Court held that

---

[5] The Illinois Department of Corrections website states that Johnson's parole date was December 8, 2014, and his projected discharge date is December 8, 2015. *Heck* applies to claims raised by individuals who have been released from prison and are serving a term of mandatory supervisory release, as well as individuals who are no longer "in custody" because their terms of supervised release have expired. *Burd v. Sessler*, 702 F.3d 429, 435 (7th Cir.

"arguments attacking the validity of a conviction cannot be advanced under § 1983 unless the conviction or sentence previously has been invalidated." *Polzin v. Gage*, 636 F.3d 834, 836 (7th Cir. 2011) (per curiam). In other words, if success on a § 1983 claim would necessarily undermine the validity of the plaintiff's underlying criminal conviction, that claim is barred by *Heck*. *Id.* at 837; *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014) ("[I]n considering whether *Heck* requires dismissal, we must consider the factual basis of the claim and determine whether it necessarily implies the invalidity of [the plaintiff's] conviction.").

Officer Reither does not invoke *Heck* and thus does not discuss the Seventh Circuit's recent decision in *Helman*. In that case, the plaintiff argued that the transcript of his guilty plea did not contain an admission that he reached for his gun before he was shot by police. The Seventh Circuit held that "the only viable theory of § 1983 liability is [the plaintiff's] theory that he did not attempt to draw his weapon until after shots were fired at him." *Id.* at 762-63. It concluded that *Heck* applied because the plaintiff's version of the facts in his § 1983 action necessarily implied the invalidity of his state court conviction for resisting law enforcement since "[i]t would have been objectively unreasonable for officers to open fire on a person who was not reaching for a weapon or otherwise acting in a threatening manner, and therefore the officers would have been employing excessive force if they did so." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

Because the plaintiff in *Helman* could not pursue a § 1983 claim premised on his claim that he drew his gun after the police shot him, he was left "with an argument under § 1983 that the officers violated his Fourth Amendment rights in shooting him when he was reaching for his

---

2012).

firearm." *Id*. at 763. The Seventh Circuit held that this claim "cannot survive summary judgment because such a response is objectively reasonable. In fact, [the plaintiff] does not even argue that he could pursue a § 1983 claim under such a scenario." *Id*. It then affirmed the grant of summary judgment in favor of the defendant officers. *Id*.; *see also Kremer v. City of Decatur*, No. 11-2258, 2014 WL 3952906, at *5 (C.D. Ill. Aug. 13, 2014) (*Heck* bars an excessive force claim brought by a § 1983 plaintiff who argued that he did not grab the officer's gun as this position was "entirely inconsistent" with his state court convictions, which were supported by stipulated testimony at the plaintiff's underlying court case that the officer and the plaintiff "had their hand on the gun at the same time and struggled for control"); *Jones v. Devore*, No. 14-CV-3394, 2015 WL 5785540, at *1 (C.D. Ill. Oct. 2, 2015) (rejecting a plaintiff's efforts to distance himself from his state court guilty plea based on his claim that he lacked money to mount an adequate defense and finding that *Heck* barred the plaintiff from claiming that the officer banged the plaintiff's head into a car hood when the plaintiff acknowledged in the underlying criminal case that he banged his head against the hood).

"The *Heck* doctrine is not a jurisdictional bar." *Polzin*, 636 F.3d at 837-38 (collecting cases). This means that a "*Heck* defense is subject to waiver." *Id*. (citing *Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999)); *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 862-63 (7th Cir. 2004) (noting that "[i]t may be that there are reasons that are not apparent from the record" that make *Heck* inapplicable and finding that the defendants' failure to raise a *Heck* defense resulted in waiver). The court finds that to the extent *Heck* applies (an issue that the court will not reach due to Officer Reiter's exclusive reliance on collateral estoppel), Officer Reiter has

waived this defense. Because *Heck* is not available, the court turns what has been described as "the thornier issue of collateral estoppel."[6] *Jones*, 2015 WL 5785540, at *1.

**B.      Collateral Estoppel**

Illinois law governs whether Johnson's guilty plea in his state court case bars him from challenging his admission about pointing a gun in his § 1983 case. *See Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013) (citing *Brown v. City of Chicago*, 599 F.3d 772, 774 (7th Cir. 2010)). "In Illinois, a litigant is estopped from raising an issue in a collateral proceeding when the following four factors are met: '(1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issue was necessary to the court's judgments, and (4) those issues are identical to issues raised in the subsequent suit.'" *Id*. (quoting *Wozniak v. DuPage Cnty.*, 845 F.2d 677, 682-83 (7th Cir.1988)); *see also Talarico v. Dunlap*, 685 N.E.2d 325, 328 (Ill. 1997) (noting that the first element is satisfied if the party against whom the estoppel is asserted was a party to the prior adjudication or was in privity to a party).

---

[6] Before reaching collateral estoppel, the court notes that the doctrine of judicial estoppel "prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker*, 707 F.3d 760 (7th Cir.2013) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Johnson asserts that judicial estoppel is inapplicable. This is correct, as for the purposes of judicial estoppel, a plea agreement is insufficient to show that a party prevailed in an underlying case. *Id*. ("g]iven the compromise nature of this plea agreement, referring to [the plaintiff] as the prevailing party is a bridge too far"); *Hudkins v. City of Indianapolis*, No. 1:13-CV-01179-SEB, 2015 WL 4664592, at *10 (S.D. Ind. Aug. 6, 2015) (declining to find that judicial estoppel applied in a § 1983 case where the underlying case was resolved via a plea agreement). Thus, the court will focus on the single issue raised by Officer Reiter: whether collateral estoppel bars Johnson's § 1983 excessive force claim.

Collateral estoppel, however, "is an equitable doctrine" so even "where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Nowak v. St. Rita High School*, 757 N.E.2d 471, 478 (Ill. 2001); *Talarico*, 685 N.E.2d at 328. The court must also "balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." *Talarico*, 685 N.E.2d at 328. The "practical realities of litigation" are relevant to whether a party has had a full and fair opportunity to litigate an issue in a prior action. *Id*. This means that a party generally must have had "the incentive and opportunity to litigate" an issue in the prior action "so that a failure to litigate the issue is in fact a concession on that issue." *Id*. When the prior action is a criminal proceeding, "the seriousness of the allegations or the criminal charge" is relevant to whether the party had an incentive to litigate. *Id*.

Here, Johnson challenges the second of the four threshold elements necessary for collateral estoppel as he argues that the factual issues that are the basis of Officer Reiter's estoppel claim were never litigated and decided on the merits since he pled guilty pursuant to a "mutually advantageous plea agreement." (Pl.'s Resp. at 5.) In support, he relies on the Seventh Circuit's decision in *Wells*. In that case, the court focused on the third threshold factor for collateral estoppel (whether the resolution of the issue was necessary to the judgment in the prior case). *Wells*, 707 F.3d at 761.

The parties in *Wells* agreed that Wells had discharged his gun into the air and that the defendant police officer shot Wells after arriving at the scene but disputed whether Wells pointed his gun at the officer before the officer fired at him. *Id*. at 758. In Wells' underlying criminal

<mark>-11-</mark>

case, the State alleged both that Wells (1) discharged his gun in the air and (2) pointed his gun at the officer. Wells pleaded guilty to reckless conduct and filed a § 1983 excessive force case against the officer who shot him.

The Seventh Circuit held that collateral estoppel did not apply because the guilty plea could have been supported by Wells' admission that he discharged his gun in the air, as well as his admission that he pointed his gun at the officer. As the court explained, "[e]ither of these actions, taken in isolation, would have supported [the] guilty plea" so under Illinois law, "the resolution of the issue of whether Wells pointed his gun at [the officer] was not necessary to the judgment in the earlier criminal case." *Id.*; *see also Kessinger v. Grefco, Inc.*, 672 N.E.2d 1149, 1156 (Ill. 1996) (collateral estoppel applies only if it "conclusively appear[s] that the matter of fact was so in issue that it was necessarily determined . . . . If there is any uncertainty on the point that more than one distinct issue of fact is presented to the court the estoppel will not be applied").

In this case, unlike *Wells*, Johnson's guilty plea did not rest on two alternative grounds. In Count 3 (aggravated assault), the State alleged that Johnson "knowingly pointed a Cal Tech 9mm handgun toward [Officer] Reiter, in a manner which placed [Officer] Reiter in reasonable apprehension of being shot, knowing [Officer] Reiter to be a peace officer engaged in the execution of his official duties." (Bill of Indictment at 3.) Johnson pled guilty to this count, as well as unlawful possession of a weapon by a felon. Without Johnson's concession that he pointed his gun at Officer Reiter, there is no factual basis for Count 3. Thus, the issue of whether Johnson pointed his gun at Officer Reiter was necessary to the disposition of Johnson's criminal case. *See Wells*, 707 F.3d at 761 (quoting *Kessinger*, 672 N.E.2d at 1156) (if it is

unclear whether a "specific factual finding was 'absolutely necessary,' issue preclusion does not apply"). Accordingly, *Wells* does not help Johnson.

To the extent that Johnson is arguing that the gun pointing issue was not litigated and decided on the merits since he pled guilty, that contention is similarly unavailing. First, during his change of plea hearing, Johnson specifically stated, "The officer – I pointed a gun at the officer being under the influence. I understand that even though I was under the influence there are still consequences to the mistakes that had happened." (Change of Plea Tr. at 17.) Second, collateral estoppel does not attach only if an individual goes to trial in an underlying criminal case and is found guilty. Instead, it can be based on a plea agreement. *See In re Complaint of Am. River Transp Co.*, 712 F. Supp. 2d 735, 740 (N.D. Ill. 2010) (applying Illinois law and finding that the driver of a speedboat was collaterally estopped from claiming he was not under the influence of alcohol at the time of an accident because he pled guilty to an indictment charging him with operating a watercraft while under the influence of alcohol); *Talarico*, 685 N.E.2d at 329-330 (discussing collateral estoppel in the context of an individual who entered a plea in his underlying criminal case). Thus, the threshold elements necessary for collateral estoppel exist.

Johnson nevertheless argues in the alternative that even if the requirements for collateral estoppel are met, the court should exercise its discretion and decline to apply collateral estoppel so he can have his day in court. The court can, in an exercise of its discretion, decline to apply collateral estoppel if it will result in "unfairness to the party being estopped." *Nowak*, 757 N.E.2d at 478. To establish the requisite level of unfairness, a party must "clearly and convincingly show[] that the policies favoring preclusion of a second action are overcome for an

extraordinary reason." *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1207 ( Ill. 1996). Ignorance, mistake, or fraud can be sufficient to avoid collateral estoppel. *Id.*; *see also Altair Corp. v. Grand Premier Trust & Inv., Inc.*, 742 N.E.2d 351, 356 (Ill. App. 2000) (extraordinary circumstances did not support allowing a plaintiff to proceed with a second complaint that was based on facts known shortly after the filing of the first complaint and well before the entry of judgment).

Johnson's equitable arguments arise from his desire to relitigate the gun-pointing issue in this case, as he does not claim ignorance, mistake, or fraud. First, Johnson contends that with the exception of his testimony during the plea colloquy (and, although unremarked here, his plea of guilty to knowingly pointing a gun towards Officer Reiter and the description of events in the original pro se complaint), he has maintained that he kept the gun trained on himself prior to being shot. He has not pointed to any authority suggesting that a desire to present a different view of the facts is sufficient to avoid collateral estoppel.

Second, Johnson asserts that a "common sense look at the facts of the case" does not support the conclusion that he pointed a gun at Officer Reiter before being shot. (Pl.'s Resp. at 6.) According to Johnson, "[c]ommon sense and the practical realities of life suggest that if he actually pointed a gun at Officer Reiter from [approximately six feet away], he would not have lived to see another day." (*Id.*) Common sense, however, says that it is just as likely that if Johnson had pointed his gun at Officer Reiter from this distance – as Johnson specifically admitted in his criminal case – that Officer Reiter would have used potentially deadly force against Johnson by incapacitating him (at the least) by aiming a gunshot at his stomach.

Third, Johnson contends that Officer Reiter has a history of violence toward civilians. Johnson has not directed the court's attention to any precedent suggesting that other alleged bad acts constitute an extraordinary circumstance. Fourth, Johnson posits that if Officer Reiter needed to use force, he could have used pepper spray or his baton. This is an argument about the merits (the reasonableness of the force used by Officer Reiter), not an argument about the applicability of collateral estoppel.

Fifth, Johnson stresses that two officers were standing near him at Russsheda's home but only one officer discharged his weapon and argues that this means that the officer who used force did so unreasonably. This argument is unpersuasive as there is no discernable reason why an officer acting within the confines of the constitution on the night in question would need to exercise potentially deadly force on an individual who was just shot in the stomach by another officer.

Sixth, Johnson asserts that the only neutral witness, Russsheda Bass, supports his version of events. The court questions whether Russsheda is neutral given that she is the mother of three of Johnson's children and thus appears to have an interest in Johnson's financial affairs. In any event, this argument goes to the merits, not to whether collateral estoppel applies.

Seventh, Johnson contends that he was suicidal and despondent on the night of the shooting and that his mental state should have been readily apparent to the officers. He criticizes Officer Reiter for not attempting to "verbally calm" him or assure him that the police were there to try to help. (*Id*. at 7.) Once again, Officer Reiter's decision to shoot Johnson instead of engaging Johnson in a discussion goes to the reasonableness of Officer Reiter's actions, not whether it would be unfair to apply collateral estoppel given the facts of this case.

Finally, Johnson argues that when determining whether to exercise its discretion to let him proceed with his § 1983 excessive force claim, the court should take judicial notice of the racial tensions between the African-American community and law enforcement. According to Johnson, given "the importance of the issues presented in today's racial climate," the court should "exercise its discretion to let [him] present his case to a jury of fellow citizens." (*Id.* at 8-9.) Johnson has not provided any support for his contention that views about important social issues can justify a judicial decision that fails to follow applicable precedent. Instead, "the court must follow the law as it understands it. *United States ex rel. Modrowski v. Briley*, No. 01 C 4183, 2002 WL 238374, at *6 (N.D. Ill. Feb. 19, 2002). Thus, Johnson's public policy argument does not entitle him to relief.

For all of these reasons, collateral estoppel applies so Officer Reiter is entitled to summary judgment. Johnson is, therefore, bound by the position he took in state court and cannot contest whether he pointed his gun at Officer Reiter on the date of the shooting.

With respect to any further proceedings, Johnson's admission in his underlying criminal case that he pointed a gun at Officer Reiter, as well as his guilty plea to a count that expressly included an admission that he pointed a gun at Officer Reiter, will be admissible as statements against interest if Johnson proceeds to trial. *See* Fed. R. Evid. 804(b)(3). In addition, the Seventh Circuit has held that a claim that the defendant officers violated the plaintiff's Fourth Amendment rights by shooting the plaintiff as he was reaching for his gun could not survive summary judgment as "such a response is objectively reasonable." *Helman*, 742 F.3d at 762. This case is set for status on December 18, 2015. The parties should be prepared to discuss what further proceedings, if any, are warranted. The court also acknowledges the zealous advocacy

provided by recruited counsel, Peter Steinmeyer of Epstein, Becker & Green, PC, who was assisted by Michelle Marks, also of Epstein, Becker & Green, PC. The court thanks counsel for their dedicated service to their client and to the court.

### IV. CONCLUSION

Officer Reiter's motion for summary judgment [39] is granted. Johnson is bound by the position he took in state court and cannot contest whether he pointed his gun at Officer Reiter on the date of the shooting. This case is set for status on December 18, 2015 at 9:30 a.m. to discuss what further proceedings, if any, are warranted.

Date:   October 30, 2015                        /s/
                                           Joan B. Gottschall
/cc                                        United States District Judge